UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

(Fort Pierce Division)

Case No. _____

ANGELA WILKINSON,

    Plaintiff,
vs.

CITY OF FORT PIERCE,

    Defendant.
_____/

## Complaint — Jury Trial Demanded

Plaintiff, Angela Wilkinson, sues defendant, City of Fort Pierce, and shows:

### Introduction and Summary

1.    This is an action for violations of the prohibitions against sex and age discrimination, including harassment, and retaliation, under Federal and Florida law, brought by Angela Wilkinson, a long-time executive assistant with the City of Fort Pierce, against the City. Wilkinson, who is still employed, sues for all available legal and equitable relief and for her costs, including reasonable attorneys' fees and expenses.

**Jurisdiction and Venue**

2.  This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII").  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3). The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear plaintiff's claims under the Florida Civil Rights Act of 1992 ("FCRA").

3.  Venue is proper in the Fort Pierce Division of the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the claims arose there and City of Fort Pierce may be found there.

**Parties**

4.  Wilkinson at all times material was a woman employed by the City of Fort Pierce employed as an executive assistant. She is protected by Title VII, the Age Discrimination in Employment Act ("ADEA") and the FCRA because:

    a.  she is a woman who suffered discrimination because of her gender;

    b.  she is over forty years of age and suffered discrimination because of her age;

    c.  she opposed what she reasonably believed to be behavior that was made unlawful by each of the two statutes; and

      d.    she participated in proceedings under Title VII, the ADEA and the FCRA.

5.    The City of Fort Pierce ("City") is a political subdivision of the State of Florida that employs more than 501 persons. It is an "employer" as envisioned by 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b) and § 760.02(7), Fla. Stat.

## Satisfaction of Conditions Precedent

6.    Wilkinson filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about August 14, 2018.

7.    The United States Department of Justice and EEOC, on September 24, 2019, issued Wilkinson a notice of right to sue, within 90 days of the receipt of which Wilkinson has filed this action asserting claims under Title VII.

8.    Wilkinson's filing with the EEOC perfected her remedies under the FCRA and the Florida Commission on Human Relations failed to conciliate or determine whether there is reasonable cause on her complaint (charge of discrimination) within 180 days of the filing of the complaint, thereby entitling her to bring a civil action under the FCRA.

9.    All other conditions precedent to the bringing of ths action have been satisfied or waived.

## Applicable Statutory Provisions

10. Title VII provides in at 42 U.S.C. § 2000e-2(a):

It shall be an unlawful employment practice for an employer —

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex …; or

(2) to limit, segregate, or classify his employees … in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … sex….

11. Title VII further provides at 42 U.S.C. § 2000e-3(a):

**Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.** It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge…under this title.

12. The ADEA provides at 29 USC § 623(a):

It shall be unlawful for an employer—

(1) to…discriminate against any individual with respect to his…terms, conditions, or privileges of employment, because of such individual's age;

(2) limit,…or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age;….

13. The ADEA also provides at 29 USC § 623(d):

It shall be unlawful for an employer to discriminate against any of his employees…because such individual…has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

14. The FCRA provides § 760.10(1), Fla. Stat.:

It is an unlawful employment practice for an employer:

(a) To…discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's … sex…[or] age….

(b) To limit,…or classify employees…in any way which would deprive or tend to de opportunities, or adversely affect any individual's status as an employee, because of such individual's … sex…[or] age….

15. The FCRA further provides at § 760.10(7), Fla. Stat.:

It is an unlawful employment practice for an employer…to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge … under this section.

## General Allegations

### Background and history

16. Wilkinson was hired by the City in November 2005 as an administrative secretary with the City Manager's office. In or about May 2006, Wilkinson was transferred to the City Clerk's office, where she was promoted to executive assistant for the Mayor and City Commission.

17. Wilkinson, May 2014, was terminated from the City Clerk's office, allegedly due a reduction in workforce that eliminated her position. She submitted a complaint against the City alleging she was threatened with termination at the direction of a City Commissioner in January 2014 and was wrongfully terminated in retaliation for filing a hostile workplace complaint ion November 2013. After investigation, none of allegations she alleged were

sustained, but the investigator did find that the City Clerk, Linda Cox, failed to follow City Rules and Regulations with respect to the recommendation for a reduction in force, which led to the elimination of her position in the City Clerk's Office. Wilkinson appealed her termination to the Civil Service Appeals Board ("CSAB").

18. During approximately the same time frame, on July 2, 2014, Wilkinson filed a wage and hour action in the United States District Court for the Southern District of Florida, Case number 14-cv-14269, against the City for unpaid overtime, liquidated damages, prejudgment interest attorneys' fees and costs. The Court entered an order on September 16, 2014 approving a settlement of the federal case *only* under which the City paid Wilkinson $12,976 for unpaid wages and liquidated damages and her attorney $3,000.

19. Later, in January 2015, Wilkinson settled her appeal to the CSAB, with Wilkinson being reinstatement to the position of executive assistant in the City Manager's office with full seniority, backpay and benefits. Left open was Wilkinson's discrimination/hostile environment/ retaliation complaint under section 24.03 of the City's Personnel Rules and Regulations ("Rules"), which never has been closed.

20. Wilkinson, still an executive assistant, transferred to the office of the newly appointed City Attorney, James Messer, in May 2016. Also

assigned to Messer's office were two other female attorneys, Caroline Valentin and Iola Mosely.

21. Wilkinson continued working in Messer's office until December 17, 2017, when she was put on administrative leave and subsequently transferred to work for the Human Relations Manager, Browning.

22. In May 2018, the City renewed Messer's contract.

23. In late July 2018, plaintiff and three other women who still worked for Messer, including Wilkinson's replacement, filed formal complaints with the City against him.

24. The City engaged a law firm to investigate the allegations and the investigative report concluded that Messer "violated the Federally protected rights of the four Complainants as to prohibited harassment based on sex."

**The working environment in Messer's Office**

25. Wilkinson was among a group of women who, according to an August 2018 investigative report commissioned by the City,

> reported grossly inappropriate dialogue by the City Attorney directed to his all-female staff which, if proven, would clearly violate the City of Ft. Pierce Personnel and Rules and Regulations' ("Rules") prohibitions against harassment…. Such dialogue, if proven, would also violate Title VII of the Civil Rights Act of 1964. ***During the interviews of the City Attorney, the City Attorney admitted most of the dialogue complained about by the Complainants.***

(Emphasis added.)

26. Messer engaged in repetitive, offensive, grossly inappropriate comments about women he saw or met in the workplace. For example:

    a. he would stand by Wilkinson's desk and comment on the physical attributes (e.g., big breasts, tight clothing) of other women;

    b. he opined to Wilkinson whether he thought women he saw were "hot," a description he applied to those he speculated would cause people to "talk" if he and the woman were seen together;

    c. he asked Wilkinson for personal information about any woman he found attractive;

    d. he goaded the female employees about their weight with comments like, "Are you sure you want to eat that?" and "That dress doesn't have any more room in it" and "Don't buy any more candy for the dish because none of you need it" and made suggestions on how they could lose weignt;

    e. he made lewd comments and told off-color jokes in front of his staff;

    f. he obsessively talked to one married female staff member about very personal things like her weight, her hair, her clothing, her shoes;

    g. he implied an inappropriate relationship between a married attorney staff member and a married colleague, singing the theme from Love Boat and making "kissing" gestures when he saw them together after a business meeting in the City Attorney's office.

27. Messer admitted during the investigation that he referred to one of the women, who had recently returned from maternity leave as "Milk Maid" and to her office as the "lactation room;" he also made frequent comments about her "baby fat."

28. Messer admitted during the investigation that when his office was looking to hire a legal secretary, he told female employees to look on Facebook to find pictures of the job applicants, which Messer would view and declare "hot" or "not hot," leading the women to believe Messer wanted to hire a legal secretary who was "hot," although Messer protested that he was trying to weed out women who were too attractive and actually preferred to hire "not hot" women to avoid distraction and gossip.

29. Messer admitted during the investigation making an unsolicited comment to the City Manager's executive assistant after he and the City Manager took a trip to the restroom about the large size of the City Manager's "member," explaining to the investigaror that the comment was made in jest because, "It's like having a pissing contest and who has the biggest member."

30. Messer also admitted during the investigation drawing a picture of a pig on a whiteboard, which he placed outside the office of an attorney who was lobbying for a raise, with the slogan, "The Hungry Pig Gets Fed, The Greedy Pig Gets Slaughtered." In the body of the pig, he wrote, "Poak Chop."

### Wilkinson's protected activity and Messer's feelings about employees who complain

31. Wilkinson not only challenged the repeated offensive comments about women's bodies and clothing made to her by Messer, but also told him his disparate treatment of an African American employee was against City policy and rules.

32. Messer, in response to the complaints of plaintiff and the other female employees in the City Attorney's office, told the women, "[L]ook., ladies, this is real simple. I've had it. I'm not going to change my management style. I manage the way I manage. If you all are unhappy, I can't change that for you. You're responsible for your happiness. Go get another job."

33. Messer admitted during the investigation that he was aware of Wilkinson's overtime lawsuit, the settlement of the lawsuit and Wilkinson's reinstatement after the appeal of her termination and that he considered Wilkinson "not a model employee" because of the steps she took to protect her statutorily protected rights—a mind set the investigator characterized as considering Wilkinson "tainted."

### How Messer retaliated against Wilkinson

34. In retaliation for Wilkinson's protected activity, Messer:

    a. in November 2017 initiated without Wilkinson's permission filed

      b.    a grievance in her name against a co-worker, sowing dissension between the women;

      c.    on December 18, 2017, gave Wilkinson a memo saying he no longer needed and executive assistant and her job would be eliminated on September 30, 2018, which he lacked the authority to do; and

      d.    unable to wait the next nine months to get rid of Wilkinson, burst into Wilkinson's office on December 19, 2017 with a security guard, began yelling and waving his arms around, and had Wilkinson walked out of the building and fircibly removed in violation of city policies and procedures.

35.    Following the December 19, 2017 incident, Wilkinson was placed on administrative leave pending an investigation. Meanwhile, Messer replaced her with a substantially younger women who did essentially the same work as Wilkinson.

36.    Among the other retaliatory conduct directed at Wilkinson upon her return from leave were her assignment to the lobby desk, functioning as a receptionist/switchboard operator and doing some limited work for Human Resources; telling her she could not grieve the elimination of her position by Messer; failing to review a video that would have substantiated Wilkinson's allegations of the City Attorney's threatening demeanor toward her during her removal from her office; and making an unsubstantiated criminal complaint against Wilkinson's husband.

### How the City Retaliated against Wilkinson after her transfer to Human Resources

37. After Wilkinson returned from administrative leave she was assigned to as executive assistant for the Human Resource Manager, Kevin Browning.

38. Although Wilkinson retained the title "executive assistant" and suffered no reduction in salary, she had significantly diminished material responsibilities after her transfer to work for Browning; to wit: she was denied access to confidential information and was relegated to the role of a switchboard operator most days.

### Damages

39. As the direct and proximate result of defendant's actions, plaintiff has suffered economic, non economic and other damages, some of which have no adequate remedy at law for the violation of his statutority protected federally and state rights.

40. Plaintiff is entitled to equitable relief including in reinstatement and injunctive relief.

### Prayer for Relief

Wherefore, plaintiff prays for all available relief under Title VII, the ADEA and the FCRA for discrimination and retaliation, including his attorneys' fees and costs if he prevails.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted,

/§ *Karen Coolman Amlong*
KAREN COOLMAN AMLONG
Florida Bar No.: 275565
Kamlong@TheAmlongFirm.com
WILLIAM R. AMLONG
Florida Bar No.: 470228
WRAmlong@TheAmlongFirm.com
AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

***Attorneys for the Plaintiff,
Angela Wilkinson***

\\amlong3\cpshare\CPWin\HISTORY\191119_0001\16CD.26