## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

(Fort Pierce Division)

Case No. 19-cv-14484-RLR

ANGELA WILKINSON,

     Plaintiff,

vs.

CITY OF FORT PIERCE,

     Defendant.

_____/

## Amended Complaint — Jury Trial Demanded

Plaintiff, Angela Wilkinson ("Wilkinson" or "plaintiff"), sues defendant, City of Fort Pierce ("City" or "defendant"), and shows:

## Introduction and Summary

1.     This is an action for violations of the prohibitions against sex and age discrimination, including harassment, and retaliation, under Federal and Florida law, brought by Angela Wilkinson, a long-time executive assistant with the City of Fort Pierce, against the City.  Wilkinson, who is still employed, sues for all available legal and equitable relief and for her costs, including reasonable attorneys' fees and expenses.

**Jurisdiction and Venue**

2.      This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Age Discrimination in Employment Act, 29 USC § 623(a) ("ADEA").  Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(a)(4) and 42 U.S.C. §2000e-5(f)(3). The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear plaintiff's claims under the Florida Civil Rights Act of 1992 ("FCRA").

3.      Venue is proper in the Fort Pierce Division of the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the claims arose there and City of Fort Pierce may be found there.

**Parties**

4.      Wilkinson at all times material was a woman employed by the City of Fort Pierce employed as an executive assistant. She is protected by Title VII, the Age Discrimination in Employment Act ("ADEA") and the FCRA because:

        a.      she is a woman who suffered discrimination because of her gender;

        b.      she is over forty years of age and suffered discrimination because of her age;

        c.      she opposed what she reasonably believed to be behavior

that was made unlawful by Title VII and the FCRA; and

        d.    she participated in proceedings under Title VII, the ADEA and the FCRA.

     5.    The City of Fort Pierce ("City") is a political subdivision of the State of Florida that employs more than 501 persons. It is an "employer" as envisioned by 42 U.S.C. § 2000e(b), 29 U.S.C. § 630(b)  and Florida Statutes § 760.02(7).

**Satisfaction of Conditions Precedent**

     6.    Wilkinson filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on or about August 14, 2018.

     7.    The United States Department of Justice and EEOC, on September 24, 2019, issued Wilkinson a notice of right to sue, within 90 days of the receipt of which Wilkinson has filed this action asserting claims under Title VII.

     8.    Wilkinson's filing with the EEOC perfected her remedies under the FCRA and the Florida Commission on Human Relations failed to conciliate or determine whether there is reasonable cause on her complaint (charge of discrimination) within 180 days of the filing of the complaint, thereby entitling her to bring a civil action under the FCRA.

     9.    All other conditions precedent to the bringing of this action have been satisfied or waived.

## **Applicable Statutory Provisions**

10.     Title VII provides in at 42 U.S.C. § 2000e-2(a):

It shall be an unlawful employment practice for an employer —

        (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's... sex ...; or

        (2) to limit, segregate, or classify his employees...in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's... sex....

11.     Title VII further provides at 42 U.S.C. § 2000e-3(a):

        It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge...under this title.

12.     The ADEA provides at 29 USC § 623:

        a.     (a) It shall be unlawful for an employer—

                (1) to...discriminate against any individual with respect to his...terms, conditions, or privileges of employment, because of such individual's age;

                (2) limit,...or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age;....

    b.     (d) Opposition to unlawful practices; participation in investigations, proceedings, or litigation

        It shall be unlawful for an employer to discriminate against any of his employees... because such individual...has opposed any practice made unlawful by this section, or because such individual...has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

13.    The FCRA provides § 760.10(1), Fla. Stat.:

    It is an unlawful employment practice for an employer:

    (a) To...discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's...sex...[or] age....

    (b) To limit,...or classify employees...in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, because of such individual's ... sex...[or] age....

14.    The FCRA further provides at § 760.10(7), Fla. Stat.:

    It is an unlawful employment practice for an employer...to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge ...under this section.

## General Allegations

### Background and history

15.    Wilkinson was hired by the City in November 2005 as an administrative secretary with the City Manager's office. In or about May 2006, Wilkinson was transferred to the City Clerk's office, where she was promoted to executive assistant for the Mayor and City Commission.

16.    Wilkinson, in May 2014, was terminated from the City Clerk's office, allegedly due a reduction in workforce that eliminated her position. She submitted a complaint against the City alleging she was threatened with termination at the direction of a City Commissioner in January 2014 and was wrongfully terminated in retaliation for filing a hostile workplace complaint in November 2013. After investigation, none of allegations she alleged were sustained, but the investigator did find that the City Clerk, Linda Cox, failed to follow City Rules and Regulations with respect to the recommendation for a reduction in force, which led to the elimination of her position in the City Clerk's Office. Wilkinson appealed her termination to the Civil Service Appeals Board ("CSAB").

17.    During approximately the same time frame, on July 2, 2014, Wilkinson filed a wage and hour action in the United States District Court for the Southern District of Florida, Case number 14-cv-14269, against the City for unpaid overtime, liquidated damages, prejudgment interest and attorneys' fees and costs. The Court entered an order on September 16,

2014 approving a settlement of the federal case *only* under which the City paid Wilkinson $12,976 for unpaid wages and liquidated damages and her attorney $3,000.

18.     Later, in January 2015, Wilkinson settled her appeal to the CSAB, with Wilkinson being reinstated to the position of executive assistant in the City Manager's office with full seniority, back pay and benefits. Left open was Wilkinson's discrimination/hostile environment/ retaliation complaint under section 24.03 of the City's Personnel Rules and Regulations ("Rules"), which never has been closed.

19.     Wilkinson, still an executive assistant, transferred to the office of the newly appointed City Attorney, James Messer, in May 2016. Also assigned to Messer's office were two female attorneys, Caroline Valentine and Iola Mosely.

20.     Wilkinson continued working in Messer's office until December 19, 2017, when she was put on administrative leave and subsequently transferred to work for the Human Relations Manager, Kevin Browning.

21.     In May 2018, the City renewed Messer's contract and thereby ratified the conduct described in paragraphs 34 and 35 below.

22.     In late July 2018, plaintiff and three other women who still worked for Messer, including Wilkinson's replacement, filed formal complaints with the City against him.

23.     The City engaged a law firm to investigate the allegations and the investigative report concluded that Messer "violated the Federally protected rights of the four Complainants as to prohibited harassment based on sex."

### The working environment in Messer's Office

24.     Messer, at all material times, was acting within the course and scope of his employment by the City and using the power delegated to him by the City to effectuate the actions of which Wilkinson complains.

25.     Wilkinson was among a group of women ("the Complainants") who, according to the investigative report referenced in paragraph 23, reported grossly inappropriate dialogue by the City Attorney directed to his all-female staff:

        a.      The allegations of the Complainants, if proven, would violate the City of Ft. Pierce Personnel and Rules and Regulations' ("Rules") prohibitions against harassment.

        b.      The allegations of the Complainants, if proven, would also violate Title VII of the Civil Rights Act of 1964.

        c.      During the interviews of the City Attorney by the investigator hired by the City to investigate the allegations of the Complainants, the City Attorney admitted most of the dialogue complained about by the Complainants.

26.     Messer engaged in repetitive, offensive, grossly inappropriate comments about women he saw or met in the workplace. For example:

a.      he would stand by Wilkinson's desk and comment on the physical attributes (e.g., big breasts, tight clothing) of other women;

b.      he opined to Wilkinson whether he thought women he saw were "hot," a description he applied to those he speculated would cause people to "talk" if he and the woman were seen together;

c.      he asked Wilkinson for personal information about any woman he found attractive;

d.      he goaded the female employees about their weight with comments like, "Are you sure you want to eat that?" and "That dress doesn't have any more room in it" and "Don't buy any more candy for the dish because none of you need it" and made suggestions on how they could lose weight;

e.      he made lewd comments and told off-color jokes in front of his staff;

f.      he obsessively talked to one married female staff member about very personal things like her weight, her hair, her clothing, her shoes;

g.      he implied an inappropriate relationship between a married attorney staff member and a married colleague, singing the theme

from Love Boat and making  "kissing" gestures when he saw them together after a business meeting in the City Attorney's office.

27.    Messer admitted during the investigation that he referred to one of the women, who had recently returned from maternity leave as "Milk Maid" and to her office as the "lactation room;" he also made frequent comments about her "baby fat."

28.    Messer admitted during the investigation that when his office was looking to hire a legal secretary, he told female employees to look on Facebook to find pictures of the job applicants, which Messer would view and declare "hot" or "not hot," leading the women to believe Messer wanted to hire a legal secretary who was "hot," although Messer protested that he was trying to weed out women who were too attractive and actually preferred to hire "not hot" women to avoid distraction and gossip.

29.    Messer admitted during the investigation making an unsolicited comment  to the City Manager's executive assistant after he and the City Manager took a trip to the restroom about the large size of the City Manager's "member," explaining to the investigator that the comment was made in jest because, "It's like having a pissing contest and who has the biggest member."

30.    Messer also admitted during the investigation drawing a picture of a pig on a whiteboard, which he placed outside the office of an attorney who was lobbying for a raise, with the slogan, "The Hungry Pig Gets Fed,

The Greedy Pig Gets Slaughtered." In the body of the pig, he wrote, "Poak Chop."

### Wilkinson's protected activity and Messer's feelings about employees who complain

31.    Wilkinson not only challenged the repeated offensive comments about women's bodies and clothing made to her by Messer, but also:

a.    refused to comply with Messer's orders not to speak to Iola Mosely, an African American attorney who worked in the City Attorney's office, to only give her those assignments Messer personally directed and to keep her "under surveillance" until he could find a way to transfer her out of the department;

b.    told Messer his disparate treatment of Mosely was against City policy and rules; and

c.    told Messer she was offended by comments such as him telling her Mexican food doesn't taste the same without a "big fat Mexican Mama" serving it and making disparaging comments about big Mexican families;

32.    Messer, in response to the complaints of plaintiff and the other female employees in the City Attorney's office, told the women, "[Look, ladies, this is real simple. I've had it. I'm not going to change my management style. I manage the way I manage. If you all are unhappy, I can't change that for you. You're responsible for your happiness. Go get another job."

33.     Messer admitted during the investigation that he was aware of Wilkinson's overtime lawsuit, the settlement of the lawsuit and Wilkinson's reinstatement after the appeal of her termination and that he considered Wilkinson "not a model employee" because of the steps she took to protect her statutorily protected rights—a mind set the investigator characterized as considering Wilkinson "tainted."

**How Messer retaliated against Wilkinson**

34.     Messer retaliated against Wilkinson because of her protected activity including by, but not limited to, the following:

a.     Messer never submitted an employee evaluation for Wilkinson;

b.     Messer, in November 2017, initiated without Wilkinson's permission a grievance in her name against a co-worker, sowing dissension between the women;

c.     Messer, on December 18, 2017, gave Wilkinson a memo saying he no longer needed an executive assistant and her job would be eliminated on September 30, 2018, which he lacked the authority to do;

d.     Messer, unable to wait nine months to get rid of Wilkinson, burst into Wilkinson's office on December 19, 2017 with a security guard, began yelling and waving his arms around, and had Wilkinson walked out of the building and forcibly removed in violation of city policies and procedures; and

e.     Messer, in February 2018, made a complaint to the Ft. Pierce Police Department against Wilkinson's husband for which there was no evidentiary basis and concerning which the City of Fort Pierce Police found no probable cause to take any action.

35.     Following Wilkinson's removal from the City Attorney's office on December 19, 2017, Messer replaced her with a substantially younger woman whose job description was the same as Wilkinson's in all material respects.

**How the City treated Wilkinson after December 19, 2017**

36.     Following the December 19, 2017 incident, Wilkinson was placed on administrative leave pending an investigation.

37.     Upon her return from administrative leave, the City assigned Wilkinson as an Administrative Assistant for the Human Resource Manager, Kevin Browning, in which capacity:

a.     while keeping her title (Executive Assistant) and salary, Wilkinson went from a Level 55 position, with a salary range of $18.39 to $33.10 per hour, to a Level 42 position, with a salary range of $13.34 to $24.01 per hour;

b.     Wilkinson did not even perform the tasks of the Level 42 position (Administrative Assistant) into which she was transferred, because most of those tasks were still performed by the previous Administrative

Assistant, whose title had been changed prior to plaintiff's transfer but whose job functions remained the same;

      c.    Wilkinson never was assigned job functions and was not allowed to perform normal administrative assistant functions such payroll and purchasing, but rather spent most of her time at the front lobby desk, functioning as a receptionist/switchboard operator, where Messer would taunt her and smirk at her several times a day when he entered and left the building; and

      d.    Wilkinson's access to the computer system was severely limited, even though doing so substantially hampered her ability to contribute to the office and required her to ask someone else to print out the information she needed fort such duties as evaluations and employment verifications and wait for that person to get around to doing the printing.

38.    Although Wilkinson retained the title "Executive Assistant" and suffered no reduction in salary, she had significantly diminished responsibilities after her transfer to work for Browning, thus causing a reduction or loss of future opportunities for promotion within the City or for finding comparable work with a different employer to that which she had had prior to being placed on administrative leave on December 19, 2017.

## Count I
## Hostile Environment Gender Discrimination Under Title VII

39.    Plaintiff incorporates the allegations of paragraphs 1, 2, 3 4(a), 5, 6, 7, 9, 10, 15-23, 24-30, 32 and 38.

40.    Messer's actions, as more particularly alleged above in paragraphs 24 through 30 and 32:

      a.    were based on plaintiff's sex;

      b.    were so serious or pervasive as to permeate plaintiff's workplace to the point that it altered the terms and conditions of her employment by:

            i.    requiring her to work in a discriminatorily hostile or abusive environment, and/or

            ii.    affecting her ability to get her job done because of Messer's obsessive digressions into sexual matters; and

      c.    would have offended any reasonable woman.

41.    As a direct, natural, proximate and foreseeable result of the actions of Messer, and, through him, the City, the City engaged in an unlawful employment practice as defined in 42 U.S.C. § 2000e-2(a).

42.    As a direct, natural, proximate and foreseeable result of the actions of Messer, and through him the City, plaintiff has suffered economic and non-economic damages, including:

      a.    reduction or loss of future opportunities for promotion or finding comparable work with a different employer;

      b.    severe emotional distress, depression, hopelessness, anxiety, loss of dignity, and other intangible injuries and related symptoms, all of which resulted in physical manifestations including headaches,

uncontrollable and constant crying, panic attacks, sleeplessness, fatigue, nervousness, rashes, inability to concentrate, nausea, epidermal rashes and loss of consortium;

       c.     reduced job performance because of her inability and/or loss of desire to perform at her highest capacity due to the emotional and physical impact on plaintiff of Messer's and the City's actions;

       d.     fearfulness of leaving her home without her husband or grown children accompanying her;

       e.     loss of enjoyment of life, including through her other regular activities, such as:

       i.     she no longer attends her teenage son's football games, school meetings and functions;

       ii.     she withdrew and became detached from friends and family: she wouldn't attend birthdays, go out to dinner, visit friends, go to movies, speak to on the phone, call or return messages; and

       iii.     she resigned from her volunteer activities and disengaged from employee social functions, and attempted to avoid Messer whenever possible.

43.   Plaintiff's damages are continuing in nature and plaintiff will continue to suffer them in the future.

44.    The conditions and effects referenced in paragraph 42 resulted in the need for healthcare services for which plaintiff incurred costs or became obligated.

45.    Plaintiff has no adequate remedy at law for the continued or future violation of her federally protected rights, entitling her to injunctive relief.

46.    Plaintiff, if she prevails, is entitled to attorneys' fees under 42 U.S.C. § 2000e-5(k).

WHEREFORE, plaintiff prays for judgment against the City for damages, injunctive relief including reinstatement to her former position or front pay in lieu of reinstatement, and her costs, including reasonable attorneys' fees.

## Count II
## Hostile Environment Gender Discrimination Under the FCRA

47.    Plaintiff incorporates the allegations of paragraphs 1, 2, 3 4(a), 5, 6, 8, 9, 13, 15-23, 24-30, 32, 38, 40, and 42-44.

48.    The City's conduct constitutes an unlawful employment practice under section 760.10, Florida Statutes.

49.    As a direct, natural, proximate and foreseeable result of the actions of Messer, and, through him, the City, plaintiff's statutorily protected rights under the FCRA have been violated and  and caused plaintiff damages as alleged in paragraphs 42 through 44 for which she is entitled to compensation under § 760.11(5), Florida Statutes.

50.    Plaintiff is entitled to an injunction prohibiting the City's discriminatory practices and providing affirmative relief including reinstatement to her former position or front pay in lieu of reinstatement under § 760.11(5), Florida Statutes.

51.    Plaintiff, if she prevails, is entitled to attorneys' fees under section 760.11(5), Florida Statutes.

WHEREFORE, plaintiff prays for judgment against the City for injunctive relief, including reinstatement to her former position or front pay in lieu of reinstatement, compensatory damages, and her costs, including reasonable attorneys' fees.

## Count III
## Age Discrimination Under the ADEA

52.    Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(b), 5, 6, 7, 9, 12(a), 15-21, 34(c) and (d), 35, 38, and 42(a).

53.    Messer's actions, as more particularly alleged above, were taken because of plaintiff's age.

54.    Messer's actions, and through him, the City's actions, as more particularly alleged above violated 29 USC § 623(a) and caused plaintiff damages as alleged in paragraph 43(a).

55.    Messer's actions, and through him the City's actions, were wilful and entitle plaintiff to liquidated damages under 29 USC § 626(b).

56.    Plaintiff is entitled to reinstatement to her former position or front pay in lieu of reinstatement, which the Court has the power to grant under 29 USC § 626(b).

57.    Plaintiff has no adequate remedy at law for the continued or future violation of her federally protected rights, entitling her to injunctive relief.

58.    Plaintiff, if she prevails, is entitled to attorneys' fees under 29 U.S.C. § 626(b).

WHEREFORE, plaintiff prays for judgment against the City for damages, including liquidated damages, reinstatement to her former position, injunctive relief and her costs, including reasonable attorneys' fees.

### Count IV
### Age Discrimination Under the FCRA

59.    Plaintiff incorporates in Count IV the allegations of paragraphs 1, 2, 3, 4(b), 5, 6, 8, 9, 13, 15-21, 34(c) and (d), 35, 38, and 42-44 as though fully set forth.

60.    As a direct, natural, proximate and foreseeable result of the actions of Messer, and, through him, the City, plaintiff's statutorily protected rights under the FCRA have been violated and  and caused plaintiff damages as alleged in paragraphs 42 through 44 for which she is entitled to compensation under § 760.11(5), Florida Statutes.

61.     Plaintiff is entitled to an injunction prohibiting the City's discriminatory practices and providing affirmative relief including reinstatement to her former position or front pay in lieu of reinstatement under § 760.11(5), Florida Statutes.

62.     Plaintiff, if she prevails, is entitled to attorneys' fees under section 760.11(5), Florida Statutes.

WHEREFORE, plaintiff prays for judgment against the City for injunctive relief, including reinstatement to her former position or front pay in lieu of reinstatement, compensatory damages, and her costs, including reasonable attorneys' fees.

### Count V
### Title VII Opposition Clause Retaliation
### (Gender, Race & National Origin)

63.     Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(c), 5, 6, 7, 9, 11, 15-23, 24-30, 31-33. 34-35, 36-38, 5, 15, 19-21, 24-38 and 42-44 as though fully set forth.

64.     Wilkinson believed in good faith that the conduct and comments of Messer about which she complained to Messer and to the City as alleged in paragraphs 22, 25, and 31-33 were against state and federal law prohibiting discrimination on the basis of gender, race and/or national origin.

65.     Messer, and through him, the City and the City by its own actions retaliated against Wilkinson for her opposition to the prohibited

activity of Messer and the City as alleged in paragraphs 31 through 38 above.

66.    The City's conduct violated Plaintiff's rights under the Opposition Clause of Title VII, 42 USC §2000e-3(a).

67.    As a direct, natural, proximate and foreseeable result of the actions of Messer and the City, plaintiff suffered damages alleged in paragraphs 42-44.

68.    Plaintiff has no adequate remedy at law for the continued or future violation of her federally protected rights, entitling her to injunctive relief.

69.    Plaintiff, if she prevails, is entitled to attorneys' fees under 42 U.S.C. § 2000e-5(k).

WHEREFORE,  plaintiff prays for judgment against the City for damages, injunctive relief, including reinstatement to her former position or front pay in lieu of reinstatement, and her costs, including reasonable attorneys' fees.

### Count VI
### ADEA Opposition Clause Retaliation

70.    Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(c), 5, 6, 7, 9, 12, 15-38 and 42(a) as though fully set forth.

71.    Wilkinson believed in good faith that the conduct of Messer about which she complained to the City as alleged in paragraph 22 was against state and federal law prohibiting discrimination on the basis of age.

72.    The City retaliated against plaintiff as alleged in paragraphs 36 through 38 because of her protected activity.

73.    The City's conduct violated Plaintiff's rights under the opposition clause of the ADEA, 29 USC § 623(d).

74.    Messer's actions, and through him the City's actions, were wilful and entitle plaintiff to liquidated damages under 29 USC § 626(b).

75.    Plaintiff is entitled to reinstatement to her former position or to front pay, which the Court has the power to grant under 29 USC § 626(b).

76.    As a direct, natural, proximate and foreseeable result of the actions of Messer and the City, plaintiff suffered damages alleged in paragraphs 42(a).

77.    Plaintiff has no adequate remedy at law for the continued or future violation of her federally protected rights, entitling her to injunctive relief.

78.    Plaintiff, if she prevails, is entitled to attorneys' fees under 29 USC § 623(b).

WHEREFORE,  plaintiff prays for judgment against the City for injunctive relief including reinstatement to her former position or front pay in lieu of reinstatement, liquidated damages and her costs, including reasonable attorneys' fees.

### Count VII
### FCRA Opposition Clause Retaliation
### (Gender, Age, Race & National Origin)

79.    Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(c) ,
5, 6, 8, 9, 13, 14, 15-38, 42-44, and 65 as though fully set forth.

80.    Wilkinson believed in good faith that the conduct and comments
of Messer about which she complained to Messer and to the City as alleged
in paragraphs 22, 25, and 31-33 were against state and federal law
prohibiting discrimination on the basis of gender, age, race and/or national
origin.

81.    The City's conduct violated Plaintiff's rights under the Opposition
Clause of the Florida Civil Rights Act, §760.10 (7).

82.    As a direct, natural, proximate and foreseeable result of the
actions of Messer, and, through him, the City, plaintiff's statutorily
protected rights under the FCRA have been violated and caused plaintiff
damages as alleged in paragraphs 42 through 44 for which she is entitled to
compensation under § 760.11(5), Florida Statutes.

83.    Plaintiff is entitled to an injunction prohibiting the City's
discriminatory practices and providing affirmative relief including
reinstatement to her former position or front pay in lieu of reinstatement
under § 760.11(5), Florida Statutes.

84.    Plaintiff, if she prevails, is entitled to attorneys' fees under
section 760.11(5), Florida Statutes.

WHEREFORE, plaintiff prays for judgment against the City for
injunctive relief, including reinstatement to her former position or front pay

in lieu of reinstatement, compensatory damages, and her costs, including reasonable attorneys' fees.

**Count VIII**<br>**Title VII Participation Clause Retaliation**

85.   Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(d), 5, 6, 7, 9, 11, 15-38 and 42 through 44 as though fully set forth.

86.   Plaintiff, by filing a charge of discrimination, participated in a proceeding under Title VII.

87.   The City retaliated against plaintiff because of her protected activity as alleged in paragraphs 36 through 38.

88.   The City's conduct violated plaintiff's rights under the Participation Clause of Title VII, 42 USC §2000e-3(a).

89.   As a direct, natural, proximate and foreseeable result of the actions of Messer and the City, plaintiff suffered damages alleged in paragraphs 42-44.

90.   Plaintiff has no adequate remedy at law for the continued or future violation of her federally protected rights, entitling her to injunctive relief, including reinstatement to her former position or front pay in lieu of reinstatement.

91.   Plaintiff, if she prevails, is entitled to attorneys' fees under 42 U.S.C. § 2000e-5(k).

WHEREFORE,  plaintiff prays for judgment against the City for damages, injunctive relief, including reinstatement to her former position or

front pay in lieu of reinstatement, and her costs, including reasonable attorneys' fees.

## Count IX
## ADEA Participation Clause Retaliation

92.    Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(d), 5, 6, 7, 9, 12, and 15-38 as though fully set forth.

93.    Wilkinson, by filing a charge of discrimination, engaged in activity protected by the participation clause of the ADEA, 29 USC § 623(d).

94.    The City retaliated against plaintiff as alleged in paragraphs 36 through 38 because of her protected activity.

95.    The City's conduct violated Plaintiff's rights under the participation clause of the ADEA, 29 USC § 623(d).

96.    Messer's actions, and through him the City's actions, were wilful and entitle plaintiff to liquidated damages under 29 USC § 626(b).

97.    Plaintiff is entitled to reinstatement to her former position or front pay in lieu of reinstatement, which the Court has the power to grant under 29 USC § 626(b).

98.    As a direct, natural, proximate and foreseeable result of the actions of Messer and the City, plaintiff suffered damages alleged in paragraphs 42(a).

99.    Plaintiff has no adequate remedy at law for the continued or future violation of her federally protected rights, entitling her to injunctive relief.

100.  Plaintiff, if she prevails, is entitled to attorneys' fees under 29 USC § 623(b).

WHEREFORE,  plaintiff prays for judgment against the City for injunctive relief including reinstatement to her former position or front pay in lieu of reinstatement, liquidated damages and her costs, including reasonable attorneys' fees.

## Count X
## FCRA Participation Clause Retaliation

101.  Plaintiff incorporates the allegations of paragraphs 1, 2, 3, 4(d), 5, 6, 8, 9, 14, 15-38 and 42-44 as though fully set forth.

102.  Plaintiff, by filing a charge of discrimination, participated in a proceeding under the FCRA.

103.  The City's conduct violated Plaintiff's rights under the Participation Clause of the Florida Civil Rights Act, §760.10 (7).

104.  As a direct, natural, proximate and foreseeable result of the actions of Messer, and, through him, the City, plaintiff's statutorily protected rights under the FCRA have been violated and caused plaintiff damages as alleged in paragraphs 42 through 44 for which she is entitled to compensation under § 760.11(5), Florida Statutes.

105.  Plaintiff is entitled to an injunction prohibiting the City's discriminatory practices and providing affirmative relief including reinstatement to her former position or front pay in lieu of reinstatement under § 760.11(5), Florida Statutes.

106.  Plaintiff, if she prevails, is entitled to attorneys' fees under section 760.11(5), Florida Statutes.

WHEREFORE, plaintiff prays for judgment against the City for injunctive relief, including reinstatement to her former position or front pay in lieu of reinstatement, compensatory damages, and her costs, including reasonable attorneys' fees.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands trial by jury for all issues so triable.

/s/Karen Coolman Amlong
KAREN COOLMAN AMLONG
Florida Bar Number 275565
Kamlong@TheAmlongFirm.com
WILLIAM R. AMLONG
Florida Bar Number 470228
Wramlong@TheAmlongFirm.com
AMLONG & AMLONG, P.A.
500 N.E. Fourth St., Second Floor
Fort Lauderdale, Florida 33301
(954)462-1983
***Attorneys for Plaintiff***
***Angela Wilkinson***

\\amlong3\cpshare\CPWin\HISTORY\200316_0001\16CD.51